# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

HELEN L. ALMANZA,

    Plaintiff,

vs.

MICHAEL ASTRUE, Commissioner of
Social Security,

    Defendant.

No. C05-3069-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION AND
COMMISSIONER'S OBJECTIONS
TO REPORT AND
RECOMMENDATION**

_____

## TABLE OF CONTENTS

I. *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. *BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  *B. The Vocational Expert's Opinion* . . . . . . . . . . . . . . . . . . . . . . 3
  *C. The ALJ's Decision* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  *D. Judge Zoss's Report and Recommendation* . . . . . . . . . . . . . . . . 7
  *E. The Commissioner's Objections* . . . . . . . . . . . . . . . . . . . . . . 9

III. *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
  *A. Standards of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
  *B. Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV. *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I. INTRODUCTION

This matter comes before the court pursuant to United States Magistrate Judge Paul A. Zoss's Report and Recommendation in this judicial review of the decision by an administrative law judge ("ALJ") that the plaintiff, Helen Almanza ("Almanza"), is not entitled to Title II disability insurance ("DI") benefits or Title XVI supplemental security income ("SSI") benefits. Almanza sought such benefits on the basis of depression, hip and foot injuries, diabetes, and obesity. The ALJ's denial of benefits was affirmed at each subsequent stage of the administrative proceedings and became the decision of the Commissioner of Social Security prompting Almanza's action for judicial review and Judge Zoss's Report and Recommendation. (Doc. No. 16.) Judge Zoss recommended that the Commissioner's decision be reversed and this case be remanded for the calculation and award of benefits. *Almanza v. Barnhart*, No. 06-4013-MWB , 2006 WL 2591477, *1 (N.D. Iowa, Sept. 11, 2006). The Commissioner filed objections to the Report and Recommendation. (Doc. No. 18.) The court finds this matter is now fully submitted for consideration.

# II. BACKGROUND

## A. Factual Background

On June 12, 2002, Almanza filed an application for DI benefits, alleging a disability onset date of November 3, 2001. (R. 49-51) Almanza subsequently filed for SSI benefits on January 27, 2004, claiming the same date of disability. (R. 235-38) Almanza alleged she was disabled due to depression, hip and foot injuries, diabetes, and obesity. (R. 90)

2

Almanza's application and request for reconsideration were both denied, based on a determination that Almanza was not disabled.

Almanza is a high school graduate and has sixty hours of college credits in the area of computer programing. (R. 243) Almanza lives alone and has no source of income other than occasional babysitting. (R. 245-246)  She stated her most debilitating medical problems that prevent her from working are pain in her hips and back from a car accident and foot pain from a workplace accident. (R. 78, 244-247)  Almanza can only stand for 15 or 30 minutes at time; and can walk only two or three blocks before she must rest. (R. 254)

The record as a whole indicates that Almanza's condition has continued to worsen, rather than improve, over the years requiring more medical and pharmacological intervention in order for Almanza to have even limited normal daily function. (R. 250-273)

## B.  The Vocational Expert's Opinion

As Judge Zoss explained in his report and recommendation, the ALJ asked the Vocational Expert ("VE") the following hypothetical questions:

> The ALJ asked VE Brian Paprocki to consider an individual fifty-one years old, forty-eight years old at the alleged onset date, with a high school education, sixty credit hours of college course work, Almanza's past relevant work, and the following limitations:
>> [L]ifting to [sic] ten pounds frequently and 20 occasionally, stand and sit for six hours each in an eight hour work day, never climb ladders, occasionally climb stairs and occasionally stoop, kneel, crouch and crawl, and frequently only balance. And the mental limitations we limit to, I'm going to limit to simple routine, repetitive tasks, only occasional changes in a routine

3

work setting, frequently only understand, remember and carry out detailed instructions.

(R. 265) The VE stated the hypothetical individual would be able to return to Almanza's past relevant work as an office helper, which is light, unskilled work activity. (R. 265; see R. 263-64) If the hypothetical individual could perform semi-skilled work, rather than only unskilled work, then the individual could return to all of Almanza's past work, including telephone solicitor, cashier/checker, customer service representative, and food service clerk. (R. 266)

The ALJ next asked the VE to consider the same hypothetical individual, but with the following additional limitations: limited to unskilled work; standing limited to thirty minutes at a time, up to two hours in an eight-hour work day; sitting limited to 20 minutes at a time, up to six hours in an eight-hour work day; only occasional exposure to extremes of heat, cold, and humidity; and only occasional interaction with the public and coworkers. (R. 266)

The VE stated this hypothetical individual would be limited to sedentary, unskilled work, and therefore would not be able to return to any of Almanza's past work. However, the individual would be able to do administrative support activities such as document preparer, addresser, and mass mailing preparer, and assembly activities such as eye dropper assembler and lamp assembler. The VE stated these jobs "are sedentary, would involve sitting as the primary function of the job, but allow good latitude for positional change to standing as well." (R. 267) The VE stated his opinion would not change if the individual could only lift five pounds frequently and ten pounds occasionally.(*Id.*)

The ALJ then asked the VE to consider the same individual, but to add the restriction that the individual would have to take unscheduled rest breaks twice daily for thirty minutes at a time. *The VE stated such an individual would be unable to work. He noted "the amount of time lost during the day would not be able to be made up by the individual as far as productivity in order to meet the minimum requirements of*

4

> the work."(R. 268) Also, in terms of mental functioning, if the
> individual in the second hypothetical would have to be
> reminded several times per hour to stay on task, then the
> individual would be unable to maintain employment. (R. 270.)

*Almanza v. Barnhart*, No. 06-4013-MWB , 2006 WL 2591477, *12 (N.D. Iowa, Sept. 11, 2006) (emphasis added).

### C. The ALJ's Decision

As Judge Zoss noted in his report and recommendation, the ALJ found Almanza's testimony to lack credibility as to her pain and physical limitations:

> The ALJ found Almanza had not engaged in substantial gainful activity since her alleged disability onset date of November 3, 2001. He noted that Almanza had done some babysitting periodically, but not at the substantial gainful activity level. (R. 14)
>
> The ALJ found Almanza has severe impairments consisting of depression and obesity, and non-severe impairments consisting of diabetes and complaints of hip pain. He found that due to her mental impairments, Almanza would have a mild limitation in the activities of daily living and maintaining social functioning, and a mild to moderate limitation in the ability to maintain concentration, persistence, and pace. He concluded she is not disabled due to her mental impairments. (*Id.*)
>
> In reviewing Almanza's medical records, the ALJ specifically discounted the opinions and conclusions of Nurse Kitten because the ALJ found her opinions to be inconsistent with Nurse Kitten's own treatment notes. (R. 18)
>
> According to the ALJ, Almanza's activities of daily living are inconsistent with her allegation that she is disabled. He noted Almanza cares for herself, does laundry and takes out the trash regularly, and occasionally changes sheets, irons, vacuums or sweeps, and does home repairs. She prepares

5

meals regularly, goes to the grocery store twice per month, and walks to the library twice per week. She also sews, plays cards, uses the computer, and reads. She attends church and sings in the choir during good weather. The ALJ noted Almanza had expressed interest in cooking and had described ideas for arts and crafts projects for the children at her church. She also reported being quite active with her grandson and she volunteered at a free clinic. The ALJ found all of these activities to be inconsistent with an allegation of total disability. (R. 20-21)

The ALJ further noted Almanza was somewhat noncompliant with her treatment and medications. She has not always checked her blood sugar levels regularly. She quit taking her cholesterol medication without consulting her doctor. She failed to control her obesity, which complicates her diabetes. And she altered her Paxil dosage more than once without checking with her doctor. The ALJ found this evidence of Almanza's noncompliance weighed against the credibility of Almanza's subjective complaints. (R. 21)

The ALJ also noted inconsistencies in the record that he felt detracted from Almanza's credibility. Almanza frequently complained of hip pain to some of her doctors, but she did not complain of hip pain to her family doctor, nor did she seek pain medications, and X-rays showed no abnormality in her right hip. Examinations showed Almanza has good strength in all of her extremities, symmetrical reflexes, and a normal gait, except that she cannot walk on her tiptoes or heels. In addition, Almanza stated she only uses over-the-counter medications for pain, but the evidence indicates she does not even take over-the-counter pain medications regularly.

The ALJ also noted Almanza told one doctor she had attempted suicide in March 2002, but the record contains no other evidence of a suicide attempt. (*Id.*)

The ALJ noted the record indicates Almanza has received good benefit from her medications for symptoms of depression, and her periods of marked improvement indicate

6

she has not been disabled from depression for any period of at least twelve months. (R. 22)

Based on inconsistencies in the record, Almanza's failure to comply with treatment and medication recommendations, her daily activities, and her improvement over time with medications, the ALJ concluded Almanza's subjective complaints were less than fully credible to the extent those allegations were inconsistent with the ALJ's finding that Almanza is not disabled. (R. 22)

Based on the evaluations from the State agency consultants, and giving weight to the VE's testimony, the ALJ concluded Almanza is able to return to her past relevant work. As a result, the ALJ concluded Almanza is not disabled. (R. 23-24)

*Almanza v. Barnhart*, No. 06-4013-MWB, 2006 WL 2591477, *12 (N.D. Iowa, Sept. 11, 2006).

### D. *Judge Zoss's Report and Recommendation*

In reviewing the ALJ's decision, Judge Zoss found the following:

The court finds the ALJ erred in failing to give great weight to the opinions of Nurse Kitten regarding Almanza's work-related mental functional abilities. The court further notes the ALJ's findings were, themselves, inconsistent, in that he found Almanza would be limited to "simple, routine, repetitive" work, yet she could "frequently remember, understand, and carry out detailed instructions." (R. 24)

Turning to Almanza's second argument, she claims the ALJ failed to give adequate consideration to the effects of Almanza's obesity on her back pain and other complaints. Again, the court agrees. The ALJ found Almanza's obesity to be a severe impairment, but he failed to consider the cumulative effects of Almanza's obesity on her musculoskeletal system and complaints. The regulations recognize that "[t]he combined effects of obesity with

7

musculoskeletal impairments can be greater than the effect of each of the impairments considered separately." 20 C.F.R. Pt.404, Subpt. P, App. 1, § 1.00Q.

The record is replete with references to Almanza's obesity and fluctuating weight, and with her doctors' recommendations that she lose weight. The court notes the disability examiner, Dr. Raval, based his recommendation regarding Almanza's work-related physical functional capacity on what her condition would be *if* she lost weight. Such a speculative opinion is useless in evaluating a claimant's current physical functional capacity.

The ALJ posed hypothetical questions to the VE that were based on the ALJ's assessment of Almanza's residual functional capacity without taking into account the effects of her obesity on her musculoskeletal complaints. If a hypothetical question does not encompass all relevant impairments, the vocational expert's testimony does not constitute substantial evidence to support the ALJ's finding of no disability. *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996) (citing *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994)). The court finds the ALJ's hypothetical questions to the VE failed to describe accurately Almanza's abilities and impairments as evidenced by the record, and therefore, the VE's testimony cannot constitute substantial evidence to support the ALJ's conclusions.

For all of these reasons, the undersigned finds the ALJ erred in finding Almanza can return to her past relevant work. This matter should be remanded for further proceedings, directing the Commissioner to give proper weight to Nurse Kitten's opinions, to consider the effects of Almanza's obesity on her musculoskeletal complaints, and to proceed through step five of the sequential evaluation process, further developing the record as necessary.

*Id*. at 17.

Case 3:05-cv-03069-MWB   Document 19   Filed 03/16/07   Page 8 of 21

### E. The Commissioner's Objections

The Commissioner objects as follows,

> Defendant respectfully objects to the Magistrate's Report and Recommendation dated September 11, 2006. Defendant bases her objection on the specific factors set forth below, but also relies on the issues and arguments set forth in Defendant's Brief. Defendant continues to argue that, for the reasons set forth in the brief, the decision of the ALJ should be affirmed. However, should, arguendo, the Court find otherwise, then a remand for a new decision, not reversal for payment of benefits, is appropriate. Such a remand should not, however, restrict the ALJ in the manner set forth in the Report and Recommendation.

> Defendant respectfully asserts that the decision of the ALJ is supported by substantial evidence, and that the Magistrate has re-evaluated the evidence and determined that different conclusions should have been reached. See Report and Recommendation at 28-31. However, a court should disturb the ALJ's decision only if it falls outside the available "zone of choice" and a decision is not outside that "'zone of choice'" simply because we may have reached a different conclusion had we been the fact finder in the first instance." *Hacker v. Barnhart* --- F.3d ----, 2006 WL 2456373 (8th Cir., August 25, 2006) (citations omitted).

> Here, the findings of the ALJ were within that appropriate zone of choice. The Magistrate re-evaluates the evidence and states that the ALJ should not have relied on statements that Plaintiff was "doing well" in her therapy because while visiting her daughter in Nebraska she "would have had assistance with most aspects of daily life . . ." See Report and Recommendation at 29. This statement is speculative as the record does not appear to support this characterization of Plaintiff's visits to Nebraska. While substantial evidence *may* support some other conclusion, substantial evidence also supports the ALJ's finding that the opinion of the nurse practitioner was inconsistent with the

9

record (Tr. 18). Defendant notes that while the Magistrate found that Plaintiff was given "assistance with most aspects of daily life" while visiting Nebraska, it may well have been Plaintiff who was providing the assistance. Nurse Kitten stated that Plaintiff "spent the winter at her daughter's home in Omaha *caring for her grandchildren*." (Tr. 201) (emphasis added). In short, the record does not support the finding that these visits to Omaha were a "treatment program" as the Magistrate suggests. See Report and Recommendation at 29.

The ALJ could properly rely on the inconsistencies in Nurse Kitten's treatment records and find that the opinions were not supported by the record (Tr. 18). Inconsistencies between the treatment notes and the medical opinion are a proper factor to consider. See *Hacker v. Barnhart*,--- F.3d ---, 2006 WL 2456373 (8th Cir., August 25, 2006) (affirmed ALJ finding that treating physician's opinion concerning claimant's intolerance for even minor physical exertion was inconsistent with his frequent admonition that she should exercise more often, and, non-treating physicians opined that claimant retained the ability to do light work); *Choat v. Barnhart*, - - - F.3d - - - 2006 WL 2321140, (8th Cir. August 11, 2006) (no indication in treatment notes that doctor instructed claimant to avoid prolonged sitting or standing, and another doctor advised claimant to engage in regular aerobic exercise). This also applies to the consideration of the opinions of "other" sources, such as a nurse or therapist. See *Raney v. Barnhart*, 396 F.3d 1007,1010 (8th Cir. 2005) ("[therapist's] treatment records disclose two treatment notes, recorded just days before [therapist] completed the RFC form, documenting Raney's family problems and [therapist's] clinical assessment of Raney as 'improved' and 'fair.' These assessments are inconsistent with the RFC form and Raney's claims of disability.").

The Report and Recommendation states that the ALJ must give "great weight" to the opinion of the Nurse practitioner due to SSR 06-3p. See Report and Recommendation at 30. Defendant objects to this characterization of the ruling, and requests that, if the Court

10

must remand the case, the ALJ should not be ordered to give "great weight" to this particular opinion, but instead be ordered merely to re-evaluate the opinion in accordance with the ruling.

The ruling does not represent a departure from prior agency guidance, but merely clarifies existing policy. SSR 06-03p states that in certain situations the opinion of non-acceptable medical source [sic] can be given greater weight than that of the acceptable medical source, however, the ruling makes clear that doing so is dependent on the facts of that particular case. SSR 06-03p states that only acceptable medical sources can give the Agency medical opinions and specifically cites 20 C.F.R. §§ 404.1527, 416.927 See 71 Fed. Reg. No. 153, 45594 (Aug. 9, 2006). SSR 06-03p also states that the factors listed in 20 C.F.R. §§ 404.1527, 416.927 explicitly apply only to the evaluation of medical factors from "acceptable medical sources." See 71 Fed. Reg. No. 153, 45595 (Aug. 9, 2006). SSR 06-03p goes on to state, however, that the factors listed in 20 C.F.R. §§ 404.1527, 416.927 can be used (and depending on the facts of the case some of the factors should be considered) in assessing the opinion of a non-acceptable medical source. This clarification is a common sense response to the fact that medical sources who are not acceptable medical sources "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." See 71 Fed. Reg. No. 153, 45594 (Aug. 9, 2006). As noted above, the ALJ provided reasons that could be used to discount the opinion of any source opinion, whether "other" or "acceptable."

Defendant also objects to the findings the Magistrate made concerning the consideration of Plaintiff's obesity. The Magistrate found that the ALJ's residual functional capacity did not properly take into account the effects of obesity. See Report and Recommendation at 30. However, this is refuted by the record. The ALJ specifically found that Plaintiff's obesity was a severe impairment, indeed Plaintiff's only severe

11

physical impairment, and the residual functional capacity contains significant physical restrictions which are based on obesity (Tr. 24).While the hypothetical question does not list Plaintiff's specific impairments, that is not required. The hypothetical question need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments. See *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001).

The Magistrate states that the record is replete with references to obesity and weight. See Report and Recommendation at 30. However, the references do not necessarily support restrictions which are greater than those found by the ALJ, they only support the fact that obesity was a severe impairment, as found by the ALJ. As noted in Defendant's brief, the ALJ did note Plaintiff's complaints of hip and back pain but discredited them (Tr. 21). Plaintiff presented no evidence to indicate that she has any significant functional limitation arising from obesity beyond those found by the ALJ. Plaintiff's alleged disability is not self-proving, and the diagnosis of obesity is not presumptive of disability. See SSR 02-1p. The Magistrate recommendation concerning the evaluation of obesity should not be adopted because there is no credible evidence to indicate that Plaintiff would be limited to a greater extent by obesity than found by the ALJ. See *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) ("Although his treating doctors noted that Forte was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions.")

Because the decision was supported by substantial evidence and was within the allowable "zone of choice," the decision should be affirmed. If the Court does not find that the decision is supported by substantial evidence, then remand for further development, not reversal for payment of benefits, is the appropriate remedy. The remand should not include the restrictions set forth in the Magistrate report concerning the

12

weight to be accorded the nurse practitioner and the degree to which the Plaintiff was limited by obesity.

(Doc. No. 18).

### III. LEGAL ANALYSIS

#### A. Standards of Review

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (citing 28 U.S.C. § 636(b)(1)); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)). The Commissioner made a timely objection in this case. Therefore, *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is required here. *See* 28 U.S.C. § 636(b)(1).

The standard of judicial review for cases involving the denial of social security benefits is based on 42 U.S.C. § 405(g), which provides that "[the findings of the Commissioner of Social Security] as to any fact, if supported by substantial evidence, shall be conclusive." This standard of review was explained by the Eighth Circuit Court of Appeals as follows:

13

> Our standard of review is narrow. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support a decision." *Id*. If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision.

*See Young v. Apfel*, 221 F3d 1065, 1068 (8th Cir. 2000).

The Eighth Circuit Court of Appeals has explained, "In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision." *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001) (quoting *Easter v. Bowen*, 867 F.2d 1128, 1131 (8th Cir. 1989)); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001) ("In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.") (quoting *Black v. Apfel*, 143 F.3d 383, 385 (8th Cir. 1998), with internal quotations and citations omitted). A court's standard of review is narrow and the court must affirm an ALJ's findings if the findings are supported by substantial evidence on the record as a whole. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). Accordingly, in reviewing the record in this case, the court must determine whether substantial evidence on the record as a whole supports the ALJ's decision that Almanza is not disabled.

### B. Discussion

The Commissioner argues that the ALJ's decision was within the "zone of choice." (Doc. No. 18) The zone of choice is generally defined as the possibility of the ALJ

14

drawing two inconsistent conclusions, a zone of choice within which the Commissioner may decide to grant or deny benefits without being subject to reversal on appeal. *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th Cir. 1994); *see also Holley v. Massanari,* 253 F.3d 1088, 1091 (8th Cir. 2001).

The Commissioner objects and argues that the findings of the ALJ were within that appropriate zone of choice, and that Judge Zoss "has re-evaluated" the evidence by stating that the ALJ should not have relied on statements that made by Almanza that she was "doing well" in her therapy because while visiting her daughter in Nebraska, Almanza had assistance with most aspects of daily life. (Doc. No. 18) The Commissioner states that this statement is speculative and that while substantial evidence may support some other conclusion, substantial evidence also supports the ALJ's finding that the opinion of the nurse practitioner was inconsistent with the record.

Judge Zoss noted the ALJ's findings were, themselves, inconsistent, in that he found Almanza would be limited to "simple, routine, repetitive" work, yet the ALJ found that Almanza could "frequently remember, understand, and carry out detailed instructions." (R. 24) This court agrees with Judge Zoss that the above inconsistencies in the ALJ's findings undermine the ALJ's already weak reasoning. A search of the record reveals that the ALJ did not provide the required analysis of these alleged inconsistencies, supported by evidence, for the supposed "inconsistencies" to rise to the "substantial evidence" standard required to deny benefits to Almanza. In order for the zone of choice to apply, the ALJ's decision must be supported by substantial evidence.

The Commissioner also objects to Judge Zoss's reliance on Nurse Kitten's opinions on two levels. The Commissioner questions whether Nurse Kitten is a bona fide "acceptable other treating source" as defined in the statute. *see* 2006 W.L. 2329939 (S.S.A.) (Doc. No. 15-2) Next, the Commissioner maintains that Nurse Kitten had

15

conflicting opinions.  Neither contention requires a result different from the one recommended by Judge Zoss however.  Regarding the supposed conflict in Nurse Kitten's opinions, Judge Zoss found that the ALJ relied on notes that Almanza was "doing well" during her visit to Nebraska to stay with her daughter as evidence that Almanza's impairments were improving to the point of being able to work.  *Almanza v. Barnhart*, No. 06-4013-MWB , 2006 WL 2591477, *16 (N.D. Iowa, Sept. 11, 2006).  The court agrees with Judge Zoss that "doing well" is a non-specific commentary not necessarily construed as a medical evaluation and does not constitute "substantial evidence" under the standard to provide support for the ALJ's decision to deny benefits.  As the Eighth Circuit Court of Appeals has explained,"[D]oing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity."  *Hutsell v Massanari*, 259 F 3d 707, 712 (8th Cir. 2001)  (citing *Gude v. Sullivan*, 956 F.2d 791, 794 (8th Cir. 1992); *Fleshman v. Sullivan*, 933 F.2d 674, 676 (8th Cir. 1991)).

Next, Judge Zoss found that Nurse Kitten's opinions regarding Almanza's mental functioning do not conflict with her treatment notes or the treatment notes of Almanza's therapists, which Nurse Kitten had available to her when she prepared her written opinion.  *Almanza v. Barnhart*, No. 06-4013-MWB , 2006 WL 2591477, *17 (N.D. Iowa, Sept. 11, 2006).  However, dependent on the facts of a case, the opinion of a medical source who is not an "accepted medical source," or "other treating source" for purposes of the regulations may outweigh the opinions of "acceptable medical sources," including (primary) treating sources, and giving great weight to those "other" medical sources does not conflict with the treating source rules in the regulations. SSR 06-03P,  2006 WL 2329939 at *5 (Aug. 9, 2006).  It can be more appropriate to give more weight to an individual that has seen the patient more often and has provided better supporting evidence

16

and explanation for their opinion, than the primary treating source. *Id*. The ALJ construed two treatment notes regarding the length of time Almanza cared for her mother to be contradictory to and inconsistent with Almanza's claims of disability which led the ALJ to find Almanza not to be credible. (R. 21,144, 213,214)  The record is not actually clear on who was caring for whom, nor even whether the "care" consisted of anything more than "moral support." This court agrees with Judge Zoss and does not find these two record entries necessarily to be factually inconsistent or indicative of Almanza's impairments and gives them no weight in evaluating the ALJ's credibility determination of Almanza.

The Commissioner objects to Judge Zoss's conclusion that the ALJ erred in failing to give proper weight to Nurse Kitten's opinion.  The Commissioner suggests that, by ruling that Nurse Kitten's opinions should be given "great weight," Judge Zoss is placing Nurse Kitten in the role of primary treating medical provider for the purpose of providing an opinion regarding Almanza's abilty to work.  The record reveals that Nurse Kitten has been a primary medical provider for Almanza since early 2002.  *Almanza v. Barnhart*, No. 06-4013-MWB , 2006 WL 2591477, *14 (N.D. Iowa, Sept. 11, 2006).  Moreover, Judge Zoss actually ruled that "proper weight" should be given to Nurse Kitten's opinions, not "great weight" as the Commissioner contends. *Id* at *17.  After a thorough review of the record, this court also agrees with Judge Zoss that the ALJ  failed to give the proper weight to the opinions of Nurse Kitten regarding Almanza's mental functional abilities as they pertain to employment.  A recent Social Security ruling regarding "acceptable medical sources" validates Judge Zoss's opinion  that Nurse Kitten's treatment opinions should be viewed as those of a primary medical provider.  2006 W.L. 2329939 (S.S.A.) (Doc. No. 15-2)

17

The Commissioner also objects to Judge Zoss's restrictions regarding the weight to be given to the treating sources. The statute requires that, regardless of how much weight the ALJ, in a social security disability benefits case affords a treating physician's opinion, the ALJ must always give good reasons for the weight given. 20 C.F.R. § 404.1527(d)(2). The court finds that the ALJ failed to provide clear reasoning regarding the weight given to opinions provided by the medical providers as outlined by statute. Judge Zoss found that Dr. Raval based his recommendation regarding Almanza's work-related physical functional capacity on what her condition *would be if* she lost weight and that such a speculative opinion is useless in evaluating a claimant's current physical functional capacity. *Id*. This court agrees with Judge Zoss that Dr. Raval's opinion should not have been given any weight by the ALJ. Medical reports from physicians must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2) (DIB) or 20 C.F.R §416.927(d)(2) (SSI). A provider's guess that if a patient lost weight she could work, does not constitute a medically supportable opinion. The ALJ's reliance on, or even the inclusion of, even part of a physician's opinion not supported by sufficient medical evidence is error. *Baldwin v. Barnhart*, 308 F. Supp. 2d 932, 936 (E.D. Ark. 2004).

The Commissioner also objects to Judge Zoss's findings regarding the "consideration of the Plaintiff's obesity." (Doc. 18) The ALJ found Almanza's obesity to be a severe impairment, but failed to consider the cumulative effects of Almanza's obesity on her musculoskeletal system and complaints. The regulations recognize that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effect of each of the impairments considered separately." 20 C.F.R. Pt.404, Subpt. P, App. 1, § 1.00Q. Judge Zoss found that the ALJ failed to give proper consideration to the

18

total effect of Almanza's obesity on her back pain and other impairments. *Almanza v. Barnhart*, No. 06-4013-MWB , 2006 WL 2591477, *17 (N.D. Iowa, Sept. 11, 2006).

The Commissioner objects to Judge Zoss's findings that the ALJ posed hypothetical questions to the VE that were based on the ALJ's assessment of Almanza's residual functional capacity without taking into account the effects of her obesity on her musculoskeletal complaints. The Commissioner argues that the questions need not use specific terms if other terms are sufficiently descriptive. (Doc. 18) The court's review of the VE's testimony reveals that the ALJ evidently meant for the restrictions that the ALJ included in the questions to adequately describe Alamnza's obesity as it would relate to employment, without actually articulating a description of Almanza's obesity or the attendant limitations. This leaves the court to guess if the VE understood that Almanza's obesity was to be considered a severe impairment or the obesity and attendant limitations were factored into the VE's responses. If a hypothetical question does not encompass all relevant impairments, the vocational expert's testimony does not constitute substantial evidence to support the ALJ's finding of no disability. *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996) (citing *Hinchey v. Shalala*, 29 F.3d 428, 432(8th Cir. 1994)). The court agrees with Judge Zoss that the ALJ's hypothetical questions to the VE failed to describe accurately Almanza's abilities and impairments as evidenced by the record, and therefore, the VE's testimony cannot constitute substantial evidence to support the ALJ's conclusions.

This case is yet another example of the Commissioner's failure to follow the mandate of the Eighth Circuit Court of Appeals in *Forehand v. Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004), which this court has repeatedly drawn to the Commissioner's attention:

> [A claimant's] ability to engage in some life activities, however, does not support a finding that she retains the ability

19

to work. *See Brosnahan [v. Barnhart]*, 336 F.3d [671], 677[(8th Cir. 2003)] ("[W]e have held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity."). We have long stated that to determine whether a claimant has the residual functional capacity necessary to be able to work we look to whether she has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc). This test is consistent with relevant regulations on the issue, *see* 20 C.F.R. § 404.1545, and we have reiterated it on a number of occasions. . . . [Citations omitted.] Notwithstanding this well-settled case law, our mandate is frequently ignored, and appears to have been in this case.

*Forehand v. Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004). The ALJ found Almanza was not credible because she was able to do some housekeeping chores and engaged in short travel. In *Forehand*, as with this case, the court must deal with the real world demands of employment. It is clear, from the evidence in the record, that Almanza's ability to perform in competitive workplace conditions is very doubtful. Further, there is very little evidence, and certainly not "substantial evidence," in the record supporting the ALJ's finding.

Because the ALJ's decision is rife with errors, the court finds the ALJ erred in finding Almanza can return to her past relevant work. This matter should be remanded for further proceedings, directing the Commissioner to give proper weight to Nurse Kitten's opinions, to consider the effects of Almanza's obesity on her musculoskeletal complaints, including adequately indicating impairments caused by obesity in any

Case 3:05-cv-03069-MWB   Document 19   Filed 03/16/07   Page 20 of 21

hypothetical questions to the VE, and to proceed through step five of the sequential evaluation process, further developing the record as necessary.

The Commissioner argues that if the court finds in favor of Almanza that, rather than award benefits, the case should be remanded in order to develop the record. Judge Zoss also reccomends that the court remand this case in order to develop the record. This court agrees that the record must proceed through a complete step five analysis in order to make a proper determination of disability.

## IV.  CONCLUSION

The Commissioner's objections are **overruled**, and the Report and Recommendation is **accepted**. *See* § 28 U.S.C.  636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").  Because the ALJ failed to fairly develop the record, the court **reverses** the ALJ's decision and **remands** this case to the Commissioner for further development of the record consistent with this opinion. 42 U.S.C. § 405(g).  On remand, the ALJ must develop the record as necessary to determine the exertional limitations upon Almanza's employment and  shall, thereafter, issue a new decision consistent with the opinion of this court.

**IT IS SO ORDERED.**

**DATED** this 16th day of March, 2007.

Mark W. Bennett
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

21